Good afternoon, Illinois Appellate Court, 1st District Court is now in session, the 6th Division, the Honorable Justice Maureen Connors presiding, case number 17-1484, People v. Heggie Carr. Did you want me to just proceed? No, wait a minute, let's get everybody on the video. Do we have the other lawyer? Yes, Assistant State's Attorney Noel Montague on behalf of the people. Oh, well, wait, I didn't know you were both on, so I can't see everybody on my... Other justices, can you see both of the lawyers, or do you just see one at a time? I can't see either of them. Oh, okay. All right, everybody, so the clerk put... If you want to go to the left top of your screen on view, click that, and click gallery, and it should bring everybody up. That's what I'm looking for. Okay, great. All right, thank you very much. The clerk has already called the case. The lawyers, I want you to identify yourselves now for the record. I know, Mr. Montague, you already have, but let's do it again. The appellant can go first. Counsel, your name for the record and who you represent. Deborah Knoll for Appellant Hedgie Carr. And Assistant State's Attorney Noel Montague on behalf of the people. All right, thank you very much, counsels. And how we're going to do this today is I'm going to give each one of you 15 minutes for your presentation. After that 15 minutes is up, we'll have questioning from the court, and the appellant will be given five minutes in rebuttal. So that's how we're going to proceed today. And Ms. Knoll, are you ready to go? Yes, Your Honor. You may proceed. Thank you. May it please the court, counsel. Again, my name is Deborah Knoll from the Office of the State Appellant Defender and I represent the appellant Hedgie Carr. It is undisputed that the alleged victim in this case, Robin Hall, hired attorney Mark Gottrich to defend Hedgie Carr against criminal charges that were filed by Hall. The circuit court should have granted Mr. Carr's post-conviction petition because he established the existence of a per se conflict of interest that was not knowingly and intelligently waived. This court should reverse and remand for a new trial because neither trial counsel nor the circuit court understood the conflict. A remedy is especially important given that we know from what happened at the evidentiary hearing, from what came out, that this happens all the time. And it is well established that a criminal defendant's Sixth Amendment right to effective assistance of counsel includes the right to conflict-free counsel. A per se conflict arises when a defendant's attorney has a tie to a person or entity that would benefit from an unfavorable verdict for the defendant. Unless a defendant knowingly waives his right to conflict-free counsel, a per se conflict is grounds for automatic reversal. And the Supreme Court has identified three different situations where a per se conflict exists. And this case involves the first situation. And I'm just going to condense it to the relevant portion, which is when defense counsel has a prior or contemporaneous association with the victim. Specifically in this case, the circuit court should have granted a new trial because Mr. Carr established at the evidentiary hearing that his trial attorney, Mr. Gottrich, had a contemporaneous association with the alleged victim, Ms. Hall, and that Gottrich never advised Mr. Carr of the potential conflict because he didn't believe that a conflict existed. And indeed, the facts of this case are particularly troubling given Gottrich's testimony at the evidentiary hearing. And I'm going to quote, And again, I'm going to quote, And this gets to, I think, the most troubling part of this case. And I'm going to read to you again, if you'll forgive me, from the evidentiary hearing. This is the court. The court says, and this is at page 326 in the record, page 112 from the transcript. He says, Because the only evidence I have is the existence of this contract with $1,000 deposit. She hands that $1,000 off to somebody and meets with an associate. She paid the deposit, basically. That's a conflict. She paid the deposit. How wide of a door shall we open here? How often do individuals, domestic partners, walk in, blah, blah, blah. How large of a door shall we drive this car through? Because for me to say this is a per se conflict, walking in and paying $1,000 deposit, means, I think, that any time somebody, the victim of the alleged offense, is involved in obtaining or paying money to some attorney, then that's a conflict. And then a little bit later, the court says, page 329 of the record, Some little meaningless associate in which a $1,000 deposit is handed off to you. There is no indication of any kind of interaction with regard to the case. How could I prevent a defense attorney from talking to the primary witness just because she was the one that paid the deposit? That happens in the wet percentage of domestic violence cases. And the problem with this is that in People v. Hernandez, the Illinois Supreme Court clearly put the onus on defense counsel to raise this with the trial court. And in... And... Sorry, I just lost my train of thought. So, basically, the problem is that both counsel and the court didn't understand this to be a conflict, and they both seem to think that because it happens all the time, there's nothing wrong with it. And that's exactly the opposite reasoning, because the whole policy behind the per se rule is, and this is coming from People v. Stovall, which is a 1968 Illinois Supreme Court case where the court first devised this per se conflict rule. They said, sound policy disfavors a representation of an accused by an attorney with possible conflicts of interest. And that's exactly what this court adhered to in People v. Palmer back in 1986, which precedes Hernandez, but is completely aligned with those values. And I discussed that case in my brief, so I won't waste our time now. But the point is that here is in Palmer, there's a possible conflict of interest where Hall would benefit from Carr's conviction, given that she was the complaining witness. And a possible conflict alone is enough to require reversal, because as this court said in Palmer, and as research has confirmed, it would be extremely difficult for a defendant to show what subtle influences or subliminal reluctance affected the decision of his defense counsel when advising and representing him. In this case, so in a lot of cases, appointed counsel is involved. Here there was a paid attorney, even though Mr. Carr was, he couldn't afford bail, he was in jail, so obviously he's not a wealthy person. But here, Gottschalk was a private attorney, so in addition to the, to me, obvious conflict of interest when there is, you know, a professional commitment by this payment being owed to him, there's also a potential financial loss involved, because if Carr had been properly admonished, he perhaps may have decided to go with a different attorney to fire Mr. Gottschalk. So Mr. Gottschalk had an incentive to not see a potential conflict, which is exactly the opposite from the policy that is behind this, which is that the per se rule, and this is again from Hernandez, page 151, the per se rule must be construed broadly to ensure that a defendant's right to effective assistance of counsel is given effect. That's exactly the opposite from what the circuit court understood as the law here. A defendant's right to counsel under the Constitution is more than a mere formality. Allowing Carr to be represented by an attorney with a potential conflict of interest without his knowledgeable consent, and again, I'm using language from Hernandez, is little better than allowing him no lawyer at all. Neither trial counsel nor the circuit court understood the potential for conflict in cases like this one, despite this clear binding precedent. This court should therefore reverse the circuit court and remand for a new trial, not only to ensure that Mr. Carr's right to counsel is protected, but also to correct this mistaken course that's happening right now in the circuit court and with this trial attorney, for all the other defendants who are being affected by this common disregard of possible conflicts in cases just like this one. And here we know, because of the evidence you're hearing, most cases we probably don't know, which is why this court's ruling is so important today. And unless this court... Oh, so you have no questions now, and I'll reserve my time for rebuttal. Is that correct? Yes, that would be fine. Thank you. Thank you. Justice Harris, do you wish to ask any questions? Yes, a question or a comment. This is a bench trial, correct? Yes, Your Honor. And the court was very well aware of opening up a door for claims in several instances. This must occur on other occasions. The court said it's a risk that it's prepared to take to ensure adequate representation for defendants. Does that raise any comments? Is the court saying that private counsel is better in all instances as above the defender program? I'm not sure I'm understanding exactly what you're saying. Can you clarify? Well, the court is saying it's going to accept... The court acknowledged there's risks in having the payment of fees as it existed in this case, but it was prepared to take it to ensure adequate representation. Now, does that... Do you have any comments on the court's feeling on the matter? I think the court was saying, well, the defender program is not as good as private counsel, so I'll take the risk. And as long as he's got a paid counsel, he's in better shape than if he had the defender. I did not read the record that way. Are you talking about what happened at the evidentiary hearing, the circuit court in this case? Well, I'm reading from near the record. The court did make the comment that accepting the situation of the victims paying the defendant's legal fees, that was a risk that the court was prepared to take. The way I read that was not as an indictment of the public defense system. I took it more as the court was concerned about sort of moving cases along on its docket and saying, you know, this happens all the time. What am I supposed to do, remand and give a new trial when this happens constantly? Which, again, is exactly the opposite from what should have happened here under Hernandez and the long line of cases that precede Hernandez. So the way I interpreted that is the court was saying that since this happens all the time, the court was not realizing that it was attorney's responsibility if there's a potential conflict of interest to bring it to the court's attention, which would be a very quick matter. It would happen, you know, in an early stage. Here we know that Mr. Gottridge understood that he had been hired by the person who was the victim. So if he had read Hernandez, he would know that that meant that he had an obligation to raise this potential conflict with the trial court. Then the trial court could have admonished Mr. Carr on the record. None of us would be here today. Like, or we'd be here on a different case. We wouldn't be in this situation. So the court, I think the court, you know, and in fairness to the court, they have a lot to do. But I think it maybe had the balance wrong where it was putting the balance on efficiency and overlooking the need for justice. That's how I read that comment. Yeah, would you agree with me, though? The court, this is a bench trial and the court having knowledge of all these facts, isn't it more probably true than not that the court decided that it was an insignificant matter? The trial would have been conducted the same way that there were no errors and there was no jury here that could be polluted by that fact or whatever, so it was a bench trial. I do agree with you that the court found no actual conflict, but the whole issue in this case, and we're not actually arguing that there was an actual conflict. We're arguing that there's a per se conflict. So it doesn't matter if this had an effect or didn't have an effect. So I do agree with you that the court below found that there was no actual conflict and that any potential conflict didn't make any difference. But honestly, this case, I mean, yes, I represent my client. I believe in his rights. I also more broadly care a lot about the integrity of the law and the integrity of the law is really sort of in danger from what I see in this case when people are completely, people being judges and trial attorneys who represent a whole lot of people have no idea of their responsibility. I find that hugely problematic. Thank you. Thank you. Justice Griffin, any questions, sir? The state seems to argue that the attorney didn't represent Hall, even though the paperwork she signed said she did, but the state argues the attorney said that was a mistake. Are you saying that just paying the fee is sufficient to qualify as associated with? In the context of this conflict and the, sorry, in the context of the sixth amendment right to counsel with conflict cases, yes, that is exactly what I'm saying. That we don't need to go into the intricacies of, you know, this isn't a divorce case where we're arguing that we want to kick counsel off or a malpractice case where we need to really go into the exactly what was involved. What we do know is that Mr. Gottridge knowingly received money from the person who he knew to be the victim in this criminal case in which he was representing the defendant. And so under Hernandez and under Palmer and the long line of cases that proceed both of those cases, that was enough that he should have known this is a potential conflict as an ethical person who practices law in a self-regulated profession. That triggers my duty to just bring this up to the trial court. Trial court can admonish my client. We can all go about our day. That's all he needed to do. Instead, he didn't understand there was a conflict. So again, I mean, I think that the state's argument is a little bit of a red herring. The association language is broader than the representation language in the first. So there's the three situations that Hernandez talks about in which there's per se conflict. So the number one that we're here now talks about association. The other two talk about representation. So I think it's people versus fields in 2012. A Supreme Court case talks about, and it's a different context in that they're deciding the meaning of entity. But they talk about how it would render if you interpret the language. Because in that case, the defendant was arguing that basically that the entity could be a person. And so it was a prosecution witness. And what the Supreme Court said is like, no, we don't want to render these other sections superfluous. And so here, again, if we just decide it's only representation, that would render the other two sections superfluous. Thanks. Thank you. Ms. Null, let me ask you, following up from Justice Harris's question, I think the trial court made a ruling when it was pronouncing its ruling that the defendant knew what Ms. Hall was doing when she visited the lawyer and gave him the $1,000. Now, can you point to any evidence that he admitted he knew? Or can you explain that to me? So your honor is correct. The court did find that Mr. Carr knew. Mr. Carr testified that he did not know. So that is a fact that conflicted. We actually are accepting that finding a fact for purposes of this appeal because it doesn't matter. Because again, and I cited this in the opening brief, I think it was a case called Acevedo, which is a second district case, where the appellate court said it doesn't matter if the person knew. And in that case, the trial attorney had actually fulfilled his professional responsibility. And he brought the potential conflict up to the trial court. And the trial court admonished the defendant. But the admonishments were insufficient because the trial court didn't really explain the significance. And so what the appellate court in Acevedo held is that it's not enough to know about the conflict. You have to know of the significance of the conflict. And here, it's clear that Mr. Carr did not know of the significance of the conflict. And the reason why it's clear is because the attorney himself didn't understand there was a conflict. So it's crystal clear that there was no, even if the court was correct, the circuit court at the post-conviction proceeding was correct in finding that there was, that Mr. Carr knew, which again, I'm It's equally clear that there was no knowing waiver. Counsel, thank you. And you retain your five minutes for rebuttal. Thank you. Mr. Montague. Yes, may it please the court. Assistant State's Attorney Noah Montague on behalf of the people in this matter. Your honors, this matter comes before the court after the petitioner was convicted of aggravated domestic battery and a physical altercation, which led the victim to have a broken cheek, multiple broken teeth, and even led her to jump out of a window to escape from the defendant, a jump which caused her to break her hip. Despite all this, she actually signed an affidavit before trial stating that it wasn't defendant who beat her. But then at trial, she testified that it was defendant and he was convicted. He obviously filed a post-conviction petition in this matter, and it went to the third stage. However, the circuit court correctly concluded that petitioner didn't prove a substantial constitutional violation. At the third stage PC hearing, only the petitioner and the attorney testified. The victim did not testify, and the other party to the contract, which was one of the lower attorneys at the firm, also did not testify. So the only evidence before this court is the testimony from the petitioner who said he didn't know what happened, but he had two documents, the contract signed by the victim and an attorney whose name I believe was O'Connor, and a letter saying that the victim paid the retainer. But there was no testimony that the victim paid that retainer out of her own funds. There was no testimony as to where those funds came from. And there was also testimony that the attorney said that he never represented the victim, he never agreed to represent her, and that the contract was written in air. And also that the petitioner's mother handled all financial matters for the case and that she paid the remainder of the fees that were due. And that whenever he had a question concerning finances, he talked to the petitioner's mother, not to the victim. When this court looks at per se conflict cases, there are two types of cases generally out there. There are cases where the representation is conceded, such as Juan Hernandez, and then there are cases where the representation is challenged, such as People v. Graham. In Juan Hernandez, the focus of the argument,  the focus of the argument was on the scope of that representation. And the state was actually asking for a ruling that because the scope of the representation was no longer active, that the representation should be disregarded and no per se conflict should be found. The ruling was that the scope of the conflict was, the scope of the representation was irrelevant and that once representation was established, that there was a per se conflict because the per se conflict rule for victims says that it's a current or former representation. So it didn't matter that the attorney was no longer actively representing that victim. In Graham, on the other hand, the representation was challenged, and what the Illinois Supreme Court said was whether or not there was representation of the victim or the witness was a threshold inquiry, and that the Illinois Supreme Court then examined factually whether or not there was in fact representation in Graham and found there was not. The court also noted that whether or not there is representation is a matter of voluntary and consensual relationship. And this is like our case here. Our case here has challenged representation. Our case here has unchallenged testimony that there was no voluntary and consensual relationship between the attorney and the victim. Instead, what they have in this case is a Scrivner's error, and the defense is essentially asking this court to raise a Scrivner's error to the level of per se conflict, and the state maintains that that is incorrect under both Graham and Juan Hernandez. And it's important to see that Juan Hernandez didn't overrule Graham or state any new law whatsoever. Juan Hernandez simply responded to the state's argument asking for a new requirement that representation be both current and active and rejected that claim. But what the court did was simply to apply the law, which had already been founded, that representation of a victim, current or former, is enough for a per se conflict. So the court only applied the law as it was already stated and did not state any new law and did not overrule Graham in any way. Or, yes, Graham. One other thing the state would note is that the Palmer case is distinguishable, and it's distinguished in the case of Miguel Hernandez. It's somewhat confusing because there's two Hernandez cases. Miguel Hernandez is an appellate court case where the court found that simply paying the retainer did not create a representation and did not create a relationship that was significant enough for a per se conflict. And you'll see in Miguel Hernandez that Palmer is distinguished on multiple grounds, one being that the victim owed the attorney more money, which was not present here. As said earlier, the mother paid the rest of the money. And also it's important to see in Palmer that the attorney in Palmer  The attorney in Palmer actually advised the victim. The attorney tried to tell the victim what to testify and how to testify and what she should say. And so, in effect, the attorney in Palmer acted as the victim's attorney. And we don't have that here. We have testimony here from the attorney that he never acted as her attorney. He never accepted her as a client and never thought of her as a client. So Palmer is distinguishable from the present case. And just reacting somewhat to the questions, as the court was saying, the state maintains that there does need to actually be representation here, that simply paying a retainer is not enough. And that's under both Miguel Hernandez, but also under Juan Hernandez. And if you look at Juan Hernandez, one of the arguments the state made in that case was that the Illinois Supreme Court should get rid of the per se conflict rule under a United States Supreme Court case named Mickens. And the state's argument was that Mickens does not allow for per se conflicts. And what the Illinois Supreme Court said in Juan Hernandez was that it was still going to maintain per se conflicts because there was an exception in Mickens and the exception in Mickens allowed for some per se conflicts, but the only one that you see there as an exception in Mickens is representation of a victim. And so the state maintains that it is important in Palmer that the attorney acted as the victim's attorney and that under Mickens, that the per se conflict rule is limited as to what it can be. So for those reasons and those stated in the people's brief, we'd ask that you affirm the defendant's dismissal of his post-conviction petition. Thank you, Mr. Montague. And any questions, Justice Harris? No, thank you. Justice Griffin? Does the state think the attorney should have disclosed to the court that he was paid $1,000 by the victim? Yes, wholeheartedly yes. And that, I think, comes from sharing a lot of what counsel said as far as policy matters. That comes from being a criminal appellate litigation attorney where life is less complicated when people simply disclose things instead of just not disclosing them. But yes, but the difference is that there's simply not a per se conflict in every situation whether or not someone should have disclosed it or not. And so those two questions the state would maintain are separate. But yes, he should have disclosed this. And then what about the defendants, whether the defendant understood the legal significance of this? Isn't that important for the court to determine? It is important, but where there isn't a per se conflict, there isn't the same ramifications because as the attorney testified, he never represented the victim and he never had any loyalties to her. He never took any actions on her behalf. This is not a case like Juan Hernandez where the attorney said that he wouldn't reveal conversations he had with the victim to his client because of that attorney-client relationship. Whereas in this case, he did speak with the victim, but he never felt that he had to stop himself from disclosing those conversations because he didn't have an obligation to her. Thank you. Mr. Montague, through your argument, I get the feeling that you think that there, I think there are three kinds of per se, two having to do with representation, one having to do with association. Do you disagree with me on that? No, but the argument is that when the court took on the challenge to per se conflicts with Mickens,  All right. So the association type of per se still exists, correct? Correct. Yeah. But I guess the state would maintain that simply paying a retainer is not enough for an association. Okay. Thank you. Now the Hernandez cases that you cited, I'm familiar with certainly Graham and Hernandez that you cite in your brief. Was there a second Hernandez case that you cited in the brief? Yes. It's a Miguel Hernandez. It's a, I believe a second district case. Okay. Yes. And council discussed it in the reply brief as well. So we both discuss it. Right. And Palmer's in the reply, but you didn't get a chance to reply to Palmer. Is there anything you want to say about Palmer other than what you already said? Just what I've already said. Okay. Let's talk about waiver, which as we know is a voluntary relinquishment of a known right. And I'm going to ask you to describe for me. Can you describe for me how, if we. Decide this is a per se. Can you argue if there is, or was not a voluntary relinquishment? No, no, I can't. Okay. All right. That'd be all for me. And council, did you want to proceed? Thank you, Mr. Montague. Do you want to proceed with your. Rebuttal five minutes. Yes. Thank you, your honor. I will be brief. So Graham. I mean, your honor already covered it basically, which is that Graham involves representation and this case involves association. So. That is one distinction. I agree that, that Hernandez did not overrule. Graham, but Hernandez did make it very clear that Graham involved that second kind of situation of per se. And that that was not a voluntary relinquishment. That was a voluntary per se conflict. And. I guess. My only other point is that. I think that this case is all about the policy. It is policy considerations that underlie the per se rule itself. And it's true that the state in Juan Hernandez asked the Supreme court to. Overrule the per se rule. And then the Supreme court said, Oh no, it's consistent with Mickens, but. More importantly, the Supreme court reaffirmed the Illinois Supreme court reaffirmed how important it is in Illinois. To have a constitutional right to counsel. And to have a constitutional right. To protect. Client and particularly poor clients, constitutional right to counsel, to conflict free counsel. And in this moment, we're in as a, as a country, as a world, I think. You know, the importance of addressing bias has never been more clear. And the reason why it's important is because you don't know how to correct something. If you don't know it exists. So. This attorney didn't understand that he had a potential conflict. I don't know how to correct that other than upholding the law. As it's stated in Hernandez to remind that attorney to remind this court. And to reaffirm what has been a longstanding rule in Illinois. And I would ask this court to reverse remand and I'm sorry, reverse and remand for a new trial. Thank you so much. Judges or justices. Any other questions? No, thank you. I want to thank both the lawyers for your excellent briefs and your excellence. Arguments before the court today. Thank you very much. Be well and be safe. Thank you.